# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| LOYD D. JOHNSON FAMILY LIMITED PARTNERSHIP NO. 1 AND LDJ OPERATIONS, LLC, § § § § § § § § § § § § | Civil Action No. 4:19-cv-866 <br> Judge Mazzant |
| *Plaintiffs*, | |
| v. | |
| NORTH TEXAS MUNICIPAL WATER DISTRICT, AND PHILLIPS AND JORDAN, INC., | |
| *Defendants*. | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' Motion to Remand and Brief in Support (Dkt. #7). Having considered the motion, the Court finds that it should be **GRANTED**.

## BACKGROUND

### I. Factual Summary

Plaintiff Loyd D. Johnson Family Limited Partnership No. 1 ("Loyd FLP") is a Texas limited partnership organized in and under the laws of the State of Texas. Loyd FLP owns the land that makes up the LoJo Ranch, which is a property located in Northeast Fannin County, Texas. Plaintiff LDJ Operations, LLC ("LDJ" and together with Loyd FLP, "Plaintiffs") is the general partner of Loyd FLP. LDJ is a limited liability company doing business in Texas under the name "LoJo Ranch."

Defendant North Texas Municipal Water District ("NTMWD") is a Texas governmental agency, created by Article XVI, Section 59 of the Texas Constitution. Defendant Phillips and Jordan, Inc. ("P&J") is a North Carolina corporation with its principal place of business in

Tennessee. NTMWD was responsible for the development, design, construction, and operation of the Bois D' Arc Creek Reservoir project, and P&J was NTMWD's contractor.

On February 2, 2018, the U.S. Army Corps of Engineers granted NTMWD a Clean Water Act section 404 permit to construct the Bois D' Arc Creek Reservoir. The site of the future Bois D' Arc Reservoir dam is 3.25 miles southwest of the southwest corner of the LoJo Ranch and is approximately 5 miles upstream of the LoJo Ranch following the meanders of the Bois D' Arc Creek. A Google Maps image of the LoJo Ranch and its proximity to the site of the future Bois D' Arc Reservoir dam is produced below.



NTMWD began construction of the Bois D' Arc Creek Reservoir on or about June 1, 2018. The construction involved significant dirt work, clear cutting of trees and bushes, digging up grass and terrain, and relocating and piling brush and soil. According to Plaintiffs, the construction

made the affected lands susceptible to flooding, as it removed the grass, trees, and bushes that previously acted as natural erosion control.

Heavy rains hit the area in late September 2018, and a portion of the LoJo Ranch was flooded. The floodwaters did not recede in typical fashion, however, and they deposited considerable volumes of silt, various kinds of sediment, and trash on the LoJo Ranch. Plaintiffs' position is that NTMWD and P&J failed to take adequate measures to prevent the storm drainage from carrying the silt, sediment, and trash from the lake site to downstream properties. A Google Maps image of the portion of the LoJo Ranch affected by the overflow is produced below.



The debris that flowed onto the property, which got caught in the trees and other vegetation located there, created logjams that prevented the floodwaters from draining and contributed to the buildup of silt and sedimentation. The silt, sediment, and other debris have done a variety of damage to the LoJo Ranch. Plaintiffs allege that 120 acres of trees have died or are likely to die

due to the flooding and silt buildup and that 440 acres of accumulated silt and sediment must be cleared and the land regraded so that it can drain as it did prior to the flooding. Moreover, there are 290 acres previously used for wheat production and 150 acres of pasture that now cannot be used. Plaintiffs claim that in the year following the initial flooding event, there have been four or five similar flooding events—a frequency of flooding they had not experienced before.

Plaintiffs complain that the total rainfall during the nine-month period from June 1, 2018 until February 28, 2019 caused more severe flooding than in comparable nine-month periods involving less total rainfall. They claim that during those periods, the LoJo Ranch property drained the rain waters more effectively and did not experience the kind of damage that it sustained during the nine-month period while the Bois D' Arc Creek Reservoir project was underway.

Plaintiffs assert the following causes of action: (1) Inverse Condemnation against NTMWD directly; (2) Inverse Condemnation against NTMWD vis-à-vis P&J's actions on a respondeat superior theory; (3) Violation of the Texas Tort Claims Act against NTMWD vis-à-vis P&J's actions on a respondeat superior theory; (4) Violation of the Texas Water Code against P&J; (5) Negligence against P&J; (6) Negligence Per Se against P&J; (7) Gross Negligence against P&J; (8) Private Nuisance against P&J; and (9) Trespass to real property against P&J.

## II. Procedural History

On September 24, 2019, Plaintiffs filed their Original Petition in the 336th Judicial District Court of Fannin County, Texas (Dkt. #1-2). On November 22, 2019, Defendant P&J, with the consent of Defendant NTMWD, filed a Notice of Removal to this Court (Dkt. #1).

On December 20, 2019, Plaintiffs filed a Motion to Remand (Dkt. #7). On January 3, 2020, Defendant P&J filed a Response (Dkt. #11). On January 13, 2020, Plaintiffs filed a Reply (Dkt. #14).

On January 30, 2020, the Court ordered the parties to submit briefing on the issue of how Plaintiffs' takings claim under the Fifth Amendment to the United States Constitution affects the issue of remand (Dkt. #19). On February 7, 2020 the parties filed their briefs (Dkts. #21; #22).

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "Only state court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing 28 U.S.C. § 1441(a)). "In an action that has been removed to federal court, a district court is required to remand the case to state court if, at any time before final judgment, it determines that it lacks subject matter jurisdiction." *Humphrey v. Tex. Gas Serv.*, No. 1:14-cv-485, 2014 WL 12687831, at *2 (E.D. Tex. Dec. 11, 2014) (citations omitted). The Court "must presume that a suit lies outside [its] limited jurisdiction," *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001), and "[a]ny ambiguities are construed against removal and in favor of remand to state court." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013) (citing *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)). "When considering a motion to remand, the removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Humphrey*, 2014 WL 12687831, at *2 (quoting *Manguno*, 276 F.3d at 723).

## ANALYSIS

P&J invoked the Court's diversity jurisdiction to remove this civil action. Plaintiffs moved to remand this case to the 336th Judicial District Court of Fannin County, Texas on two alternate

grounds: (1) P&J's Notice of Removal was not timely filed; and (2) P&J did not carry its burden to establish that Plaintiffs improperly joined NTMWD.

Before getting to the parties' arguments, however, the Court will address its federal question jurisdiction over this action. As the Court pointed out in its January 30, 2020 Order (Dkt. #19), in the Original Petition, Plaintiffs asserted that "NTMWD's actions and conduct constitute a taking, damaging or destruction of Plaintiffs' property under Article 1, § 17 of the Texas Constitution *and the Fifth Amendment to the United States Constitution*" (Dkt. #1, Exhibit B, pg. 16) (emphasis added). However, neither party addressed the Court's potential federal question jurisdiction over this action, pursuant to 28 U.S.C. § 1331, and how that affects the issue of remand. Thus, the Court ordered briefing on the subject. After considering the parties' briefing, it appears to the Court that, while there may be a federal question pleaded on the face of the Original Petition, that is not an appropriate ground to deny Plaintiffs' motion to remand here.

In its brief, P&J argues that the Court has federal question jurisdiction over this case. To explain why it did not assert federal question jurisdiction as the ground for removal in the Notice of Removal, P&J argues that it "had no standing to remove the case based upon federal question jurisdiction because the Fifth Amendment takings claim was only asserted against [NTMWD]." (Dkt. #22). P&J argues that, despite its failure to assert federal question jurisdiction in the Notice of Removal, the Court can nevertheless *sua sponte* exercise its federal question jurisdiction over this action.

Plaintiffs rejoin on two grounds. First, Plaintiffs argue that the presence of a federal question on the face of the Original Petition made the case initially removable and triggered the thirty-day removal clock. *See* 28 U.S.C. § 1446(b)(1). If this is the case, Plaintiffs argue, the Notice of Removal was untimely to the extent that the basis for removal is federal question

jurisdiction. Second, and more generally, Plaintiffs argue that the Notice of Removal must assert the basis for removal and, because P&J failed entirely to assert federal question jurisdiction as the ground for removal, removal on that ground is improper. The Court agrees as to both.

With respect to Plaintiffs' first argument, due to the presence of a federal question on the face of the Original Petition, the case was removable as of September 27, 2019—the date P&J was served. Because P&J did not file its Notice of Removal within thirty days of being served with the Original Petition, its Notice of Removal was untimely.[1] *See* 28 U.S.C. § 1446(b)(1). In fact, *even if* the removal clock instead began ticking when NTMWD was served with the Original Petition—on October 7, 2019—the Notice of Removal was still untimely.

Regarding Plaintiffs' second argument, there is a statutory procedure to amend a notice of removal: "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653. But this is limited to amending only *technical* defects in the Notice of Removal, not substantive defects. *See Fantroy v. Dallas Area Rapid Transit*, No. 3:13-cv-0345-K, 2013 WL 2284879, at *7 (N.D. Tex. May 23, 2013) ("Section 1653 permits amendments to cure technical defects in the jurisdictional allegations; it does not permit an amendment which adds an entirely different jurisdictional basis for the removal."); *Wilson v. Int'l Bus. Machines Corp.*, No. 3:11-cv-0944-G, 2011 WL 4572019, at *2 (N.D. Tex. Oct. 3, 2011) ("Courts are very reluctant, however, to permit an amendment to a notice of removal that adds a new basis for federal jurisdiction.") (citing 14C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3733 (4th ed. 2011)); *Briarpatch Ltd., L.P. v. Pate*, 81 F. Supp. 2d 509, 517 (S.D.N.Y. 2000) (same); *Wyant v. National R.R. Passenger Corp*, 881 F. Supp. 919 (S.D.N.Y. 1995) (same); *see also Wood v. Crane Co.*, 764 F.3d 316, 323 (4th Cir. 2014) ("[D]istrict

---

[1] Indeed, P&J did not file its Notice of Removal until November 22, 2019—almost *sixty* days after being served.

7

courts have discretion to permit amendments that correct allegations already present in the notice of removal. Courts have no discretion to permit amendments furnishing new allegations of a jurisdictional basis.") (citing *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 831 (1989)); *Lopez-Munoz v. Triple-S Salud, Inc.*, 754 F.3d 1, 4 (1st Cir. 2014) ("While the defendant cited the federal officer removal statute, 28 U.S.C. § 1442(a)(1), in the notice, it made no effort to defend removal on that ground either in its opposition to the plaintiff's motion to remand or in its appellate briefing. Consequently, that putative ground for removal is waived."); *In re Blackwater Security Consulting, LLC*, 460 F.3d 576, 590 n.8 (4th Cir. 2006) (same); *Hinojosa v. Perez*, 214 F. Supp. 2d 703, 707 (S.D. Tex. 2002) (explaining that a defendant cannot remove on grounds not asserted or referred to in the notice of removal).

And as for P&J's argument that it had no ability to remove the case based on federal question jurisdiction due to the fact that the federal question was asserted against only NTMWD, its co-defendant, the Court need not decide that issue. Indeed, if P&J is correct that it was not able to remove based on the presence of a federal claim against NTMWD, then the case is unremovable for P&J—requiring remand of the civil action.

The bottom line is that federal question jurisdiction is not a proper ground for removal here. Either P&J was unable to remove the case based on federal question jurisdiction from the beginning, or P&J did have the ability to remove on this basis and failed to do so. That is, P&J's eleventh-hour attempt to invoke federal question jurisdiction as a basis for removal fails—either it was improper, untimely, or both. Accordingly, the Court turns now to removal based on its diversity jurisdiction, which was the ground asserted in the Notice of Removal.

## II. Removal Based on Improper Joinder

Under 28 U.S.C. § 1441(a), a defendant may remove a civil action pending in state court to a federal district court if the district court has original jurisdiction over the action. A federal court has original jurisdiction over all civil actions in which there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). There must be complete diversity among the parties, meaning every plaintiff must be diverse from every defendant. *See Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)). The Court considers only the citizenship of real and substantial parties to the litigation. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460–61 (1980); *see also Johnson v. Heublein*, 227 F.3d 236, 240 (5th Cir. 2000). "The question of whether jurisdiction exists is resolved by looking at the complaint at the time the [notice of] removal is filed." *Brown v. Southwestern Bell Tel. Co.*, 901 F.2d 1250, 1254 (5th Cir. 1990).

A party seeking removal based on improper joinder "bears a heavy burden of proving that the joinder of the in-state party was improper." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004). "In deciding whether a party was improperly joined, we resolve all contested factual issues and ambiguities of state law in favor of the plaintiff." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007). "[A]ny doubt about the propriety of removal must be resolved in favor of remand." *Id.* at 281–82.

To show improper joinder, the defendant must "demonstrate[] that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 577; *see also Travis v. Irby*, 326 F.3d 644,

647 (5th Cir. 2003) (explaining that to establish improper joinder, the defendant must prove: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."). To determine whether there was improper joinder:

> The [C]ourt may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry. . . . [W]e caution that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude the plaintiff's recovery against the in-state defendant.

*Rubin v. Daimlerchrysler Corp.*, No. Civ.A. H044021, 2005 WL 1214605, at *2 (quoting *Smallwood*, 385 F.3d at 573–74). The question is whether a plaintiff has "any possibility of recovery against the party whose joinder is questioned." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). "[T]he existence of even a single valid cause of action against in-state defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court." *Gray ex rel. Rudd v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 412 (5th Cir. 2004).

The Court will now conduct a Rule 12(b)(6) analysis of Plaintiffs' claims against NTMWD to determine whether NTMWD was improperly joined.[2]

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each

---

[2] The Court elects not to "pierce the pleadings and conduct a summary inquiry," opting instead to conduct a Rule 12(b)(6) analysis. This decision is entirely within the Court's discretion.

claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims

or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing [C]ourt to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

### A. Inverse Condemnation

Applying the 12(b)(6) standard to the facts at hand, the Court finds that Plaintiffs' Original Petition states a claim under state law against NTMWD.

In Texas, to prevail on an inverse condemnation claim, a plaintiff must establish: (1) a governmental entity intentionally performed certain acts (2) that resulted in a taking or damaging of property (3) for public use. *Gen. Services Com'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 598 (Tex. 2001); *City of Dallas v. Zetterlund*, 261 S.W.3d 824, 828 (Tex. App.—Dallas 2008, no pet.) (citing *Garland & Ne. R.R. v. Hunt County*, 195 S.W.3d 818, 821 (Tex. App.—Dallas 2006, no pet.). "[T]he requisite intent is present when a governmental entity knows that a specific act is causing identifiable harm or knows that the harm is substantially certain to result." *Tarrant Reg'l Water Dist. V. Gragg*, 151 S.W.3d 546, 555 (Tex. 2004).

To establish the requisite elements of an inverse condemnation claim, Plaintiffs alleged the following in their Original Petition:

> NTMWD is responsible for the development, design, construction, and operation of the alleged public use and public necessity Bois D'Arc Creek Reservoir project, including the construction project undertaken by NTMWD's contractor P&J, near and upstream from Plaintiffs' property. NTMWD intentionally permitted, designed, constructed, and/or operated the Bois D' Arc Creek Reservoir and its construction for which Plaintiffs' property is being temporarily and/or permanently taken, damaged, and destroyed in Fannin County, Texas. The project was designed, constructed and operated to either intentionally deliver surface water runoff onto

and through Plaintiffs' property for public use, or in a way such that it was substantially certain that the LoJo Ranch would be damaged because of the project. NTMWD knew and intended that such surface water runoff be delivered onto and through Plaintiffs' property, or the delivery of such surface water runoff and resulting damages were the substantially certain result of NTMWD's plan, design, construction, and operation of the project. NTMWD's intentional diversion of such surface water runoff onto Plaintiffs' property has, in fact, caused damage to the value of Plaintiffs' property.

P&J argues in response that a small number of floods, or minor and infrequent flooding, simply cannot create a taking as a matter of law. To be sure, Texas courts have held that a single flood event, or even a small number of flooding events, generally does not constitute a taking. *See, e.g.*, *Gragg*, 151 S.W.3d at 555 (citing *Brazos River Auth. v. City of Graham*, 354 S.W.2d 99, 107 (Tex. 1961)) ("In the case of flood-water impacts, recurrence is a probative factor in determining the extent of the taking and whether it is necessarily incident to authorized government activity, and therefore substantially certain to occur. While nonrecurrent flooding may cause damage, a single flood event does not generally rise to the level of a taking."). But Plaintiffs' Original Complaint alleges multiple flooding events. Specifically, Plaintiffs claim that "[s]ince the event that caused the damage to the ranch, there have been four or five events that have flooded the ranch just in the last year. This frequency of flooding was never experienced before." In the Court's view, such allegations are sufficient to survive a 12(b)(6) challenge.

P&J also argues that Plaintiffs' pleadings fail to allege that the flooding was permanent, frequent, or inevitable due to a fixed condition. But as Plaintiffs point out in their reply, their inverse condemnation claim contemplates more than just flooding. Indeed, Plaintiffs seek relief for the damage to the LoJo Ranch that *resulted* from the flooding—damage that they allege is permanent. Because Plaintiffs claim that the deposit of silt, sand, trees, and sediment on the LoJo Ranch permanently damaged the property, the Court is satisfied that Plaintiffs carried their burden of pleading that the flooding events were more than "isolated damaging flooding

13

event[s] . . . followed by smaller flood events" (Dkt. #11, pg. 16). That is, the Court is persuaded that Plaintiffs adequately pleaded that the requisite "taking or damaging of property" occurred. *See Gen. Services Com'n*, 39 S.W.3d at 598.

As for the third element, the parties do not dispute that the inverse condemnation, to the extent there was one, was alleged to be for a public use. In any event, the Court finds that Plaintiffs adequately pleaded that the public use element was met.

Thus, the Court finds that Plaintiffs alleged sufficient factual matter to state a claim of inverse condemnation that is plausible on its face. Because Plaintiffs' inverse condemnation claim can survive a Rule 12(b)(6) challenge, there was no improper joinder here. *See Gray*, 390 F.3d at 412. This means that NTMWD is a properly joined, nondiverse party; thus, this Court lacks diversity jurisdiction over the present action. Accordingly, the action must be remanded to the state court from which it was removed.

## III. Timeliness of Removal

The parties devote considerable space in their motions to arguing about whether the Notice of Removal was timely filed where the basis of removal was diversity jurisdiction premised on a theory of improper joinder. In view of the Court's above discussion, however, the Court need not address this argument. Indeed, even if the Notice of Removal on this basis was timely filed, there is a properly joined, nondiverse defendant; thus, the Court does not have diversity jurisdiction over this civil action.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Plaintiffs' Motion to Remand and Brief in Support (Dkt. #7) is **GRANTED**, and this case is remanded to the 336th Judicial District Court of Fannin County, Texas.

**IT IS SO ORDERED.**

**SIGNED this 19th day of February, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE